Juan Bianchi Rosafa, Plaintiff and Appellee, *v.* Manuel V. Domenech, Treasurer of Puerto Rico, Defendant and Appellant.

No. 6100. Argued April 28, 1933.—Decided June 26, 1934.

*Benjamin J. Horton, Attorney General, (Charles E. Winter* on the brief) and *M. Rodríguez Serra, Assistant Attorney General,* for appellant. *Frank Martínez* and *Frank Bianchi* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

On October 14, 1930, Juan Bianchi Rosafa brought this suit in the District Court of Mayagüez against Manuel V. Domenech, Treasurer of Puerto Rico, requesting the refund of $8,251.03 paid as income tax under protest, plus interest and costs.

The defendant demurred to the complaint on the ground that the same did not state sufficient facts and later answered thereto admitting some of the facts averred, denying others and pleading some special defenses.

Later the parties reached an agreement and submitted to the District Court the following stipulation of facts:

"*First.*—The plaintiff, Juan Bianchi Rosafa, is of full age and a resident of Mayagüez, Puerto Rico, and the defendant, Manuel V. Domenech, is of full age and holds at present the office of Treasurer of Puerto Rico.

"*Second.*—Return number 8 corresponds to tax year 1917, by virtue of Federal Act of September 8, 1916, as amended October 3, 1917.

"*Third.*—Said return was signed by the plaintiff before an inspector of the Finance Department on May 5, 1920.

"*Fourth.*—The return was filed in the Finance Department of Puerto Rico on May 5, 1920.

"The said return was an additional one prepared by Mr. Roig, an inspector of the Finance Department, in accordance with the data he had obtained in an investigation made at the request of the Treasurer of Puerto Rico, of the business dealings of a partnership known as Successors of Bianchi, of which the plaintiff was a member, and said return was signed under oath by the taxpayer himself before Mr. Roig when the same was submitted to the plaintiff's consideration. The original return rendered in behalf of the plaintiff by his attorney-in-fact, Enrique O. Green, was filed in the Finance Department on May 30, 1918; the return filed by Mr. Green in behalf of the taxpayer, plaintiff herein, did not state all the benefits received by the taxpayer during the year 1917 from the firm Successors of Bianchi, to which the plaintiff belonged.

"*Fifth.*—On June 10, 1922, in accordance with said additional return, the Treasurer of Puerto Rico assessed on the plaintiff as income tax, by virtue of the aforesaid Federal Act of September 8, 1916, as amended October 3, 1917, the sum of $4,067.22; this sum represents the tax assessed on said additional return less the amount of the tax paid under the original return, which was the only one that the plaintiff had rendered for that year, amounting to $350.14, and for which receipt number 6 was issued.

"*Sixth.*—From the time that said return was filed in the Finance Department up to the 17th of September, 1930, the plaintiff has not paid to the Treasurer of Puerto Rico or to any other officer or employee of the Finance Department the amount claimed in the complaint.

"*Seventh.*—Mr. Enrique O. Green, acting in behalf of the taxpayer, filed income tax return number 8 for the calendar year ending December 31, 1917. By virtue of said tax return an assessment of $350.14 was made and receipt number 6 was issued to the plaintiff. The assessment of this tax was notified to the plaintiff and payment was demanded from him on May 29, 1918.

"*Eighth.*—Successors of Bianchi having filed a return wherein benefits were declared, the Finance Department agreed to prac-

tice an investigation of the business transactions of the firm Successors of Bianchi, of which the plaintiff was a member. Mr. Roig, one of the inspectors of the Finance Department, drew, as a result of said investigation, an additional return in the name of the plaintiff, wherein the income that had originally been declared in the return rendered by Mr. Green on behalf of the plaintiff was included, as well as other benefits whose declaration had been omitted and which corresponded to him in the distribution of earnings or benefits made among its members by the aforesaid firm of Successors of Bianchi for the year 1917, the said benefits not previously declared amounting to the sum of $86,795.88. An additional tax of $4,417.36 was then fixed on the taxpayer, plaintiff herein. From this sum was deducted the amount paid under original receipt number 6, that is $350.14, leaving a balance of $4,067.22, the sum claimed in the complaint.

"*Ninth.*—The said additional return prepared, ex officio, by Mr. Roig, the inspector, containing the benefits not previously declared, was voluntarily signed and sworn to, without any protest, by the plaintiff himself.

"*Tenth.*—The assessment of this tax was notified to the plaintiff on July 10, 1922. On the 26th of said month and year the plaintiff retained the professional services of Attorney Ortiz Alibrán to request from the Treasurer of Puerto Rico the cancellation of receipt number 6-A for the sum of $4,067.22, alleging the prescription of the right to assess and collect said tax after the lapse of the three years fixed by Section 9A-1 of the Federal Act of September 8, 1916, as amended October 3, 1917. The request presented in behalf of the taxpayer, by Attorney Ortiz Alibrán, was denied, and on August 4, 1922, the Collector of Internal Revenue of Mayagüez notified the taxpayer of said decision and demanded payment of the taxes, and informed him that distraint proceedings would be begun. Attorney Ortiz Alibrán was informed on the 8th of August, 1922, that the cancellation of the receipt requested by him had been denied because only two years and one month had elapsed from May 5, 1920, when the additional return was filed to the date of the notification of the assessment, July 10, 1922.

"*Eleventh.*—Subsequently the taxpayer availed of the services of Mr. Guillermo Cabrera to request from the Treasurer of Puerto Rico the suspension of the collection of receipt number 6-A, to which the person who was the Treasurer of Puerto Rico at the time acquiesced

and ordered, by telegraph, the Collector of Internal Revenue of Mayagüez to stop collection for 30 days from October 20, 1922. At the expiration of said extension, the plaintiff took new steps to postpone collection by retaining the services of Attorney Cayetano Coll Cuchí, who in behalf of the taxpayer requested from the Finance Department in April, 1923, that an investigation be made, or that in default thereof, the whole case be submitted to the decision of the Board of Review and Equalization. The Treasurer of Puerto Rico acquiesced to stop collection and it was agreed to verify the return in the investigation requested by Attorney Coll Cuchí, of which the Collector of Internal Revenue of Mayagüez was informed on the 13th of April, 1923. On this date the collector had already taken steps to begin attachment proceedings against the property of the plaintiff and taxpayer.

"*Twelfth.*—On the 13th of October, 1923, the inspectors of the Finance Department who had been commissioned to practice the investigation requested by Attorney Coll Cuchí, in behalf of the taxpayer, informed that they were unable to make the same because the taxpayer notified them that the books of account of the partnership Successors of Bianchi had been destroyed by the earthquakes of 1918.

"*Thirteenth.*—On September 24, 1925, the Treasurer of Puerto Rico decreed, at the request of the taxpayer, the postponement of the auction sale of the attached property of the plaintiff, which was set for October 8, 1925.

"*Fourteenth.*—In July, 1927, the plaintiff appealed to the Board of Review and Equalization and alleged in said appeal that the income tax assessed on the plaintiff and taxpayer had prescribed in accordance with the law.

"*Fifteenth.*—On March 11, 1930, the Secretary of the Board of Review and Equalization notified the plaintiff that said appeal could not be prosecuted because it had been filed after the expiration of the time fixed by law.

"*Sixteenth.*—In June, 1930, the Treasurer of Puerto Rico attached in the name of the People of Puerto Rico real property of the plaintiff, which would have been sold at public auction in accordance with the law if the tax assessed was not paid by the plaintiff; the latter paid under protest to avoid the sale of his property at public auction.'

Shortly thereafter the following additional stipulation was submitted:

"1. That on September 23, 1930, the plaintiff duly filed in the office of the Treasurer of Puerto Rico a petition for refund for the sum of $8,251.03, amount of the tax levied, plus interest and surcharges, the said petition for refund having been denied by the Treasurer of Puerto Rico.

"2. That the plaintiff filed on appeal the said petition for refund before the Board of Review and Equalization, which was also denied.

"3. That the plaintiff filed before this court the complaint in the above entitled case within the period prescribed by the law relative to the refund of taxes paid under protest."

On the 25th of April, 1932, the District Court decided the case, holding that the law and the facts were in favor of the plaintiff and rendering judgment allowing what was claimed in the complaint. It does not appear that an opinion was rendered in support of its findings.

The defendant, feeling aggrieved, took the present appeal and as sole error assigns that committed, in his opinion, by the District Court in deciding that the facts and the law were in favor of the plaintiff and consequently in sustaining the complaint.

As may be seen, there is no question as to the correctness of the tax. As was expressly stated in the stipulation, in the additional return in question there appeared the benefits not previously declared, the return was voluntarily signed and sworn to, without any protest, by the plaintiff himself, and the tax collected by the Treasurer represents the tax assessed on said additional return less the amount of the tax paid under the original return. All the questions raised by the taxpayer, first before the Treasurer and later before the Board of Review and Equalization and finally before the District Court were questions of prescription. Consequently, if the right of the People had prescribed at the time in which the taxes were paid under protest, nothing else would have to

be looked into in order to affirm the judgment appealed from. If it had not prescribed, the judgment should be reversed and the complaint dismissed.

Let us find, first, whether on July 10, 1922, the day according to the stipulation the taxpayer was informed of the tax assessed in conformity with the additional return, the right to assess and collect said tax had prescribed or not, as alleged by the taxpayer before the Treasurer through its counsel Ortiz Alibrán.

The case is governed by the Federal Income Tax Act of September 8, 1916, which was made applicable to Puerto Rico by its Section 23. The pertinent part of Section 9 of said law, which is the one applicable herein, provides:

"Sec. 9(a) That all assessments shall be made by the Commissioner of Internal Revenue and all persons shall be notified of the amount for which they are respectively liable on or before the first day of June of each successive year, and said amounts shall be paid on or before the fifteenth day of June, except in cases of refusal or neglect to make such return and in cases of erroneous, false or fraudulent returns, in which cases the Commissioner of Internal Revenue shall, upon the discovery thereof, at any time within three years after said return is due, or has been made, make a return upon information obtained as provided for in this title or by existing law, or require the necessary corrections to be made, and the assessment made by the Commissioner of Internal Revenue thereon shall be paid by such person or persons immediately upon notification of the amount of such assessment. . . ."

The income of the taxpayer herein corresponded to the natural year 1917. The tax should have been assessed and the taxpayer notified on or before June 1, 1918. Due notice was given and the sum of $350.14 was paid by taxpayer. However, an investigation disclosed that the return filed by the taxpayer in May 1918 was, at least, erroneous; it did not contain all the income received by him. An inspector of the Finance Department prepared the additional return mentioned in the stipulation and submitted the same to the tax-

payer, who accepted and signed it voluntarily. It was filed in the Treasurer's office on May 5, 1920, within the term of three years fixed by the statute.

Once the return is filed under the said conditions, the law provides that the tax levied by the Treasurer shall be paid by the taxpayer immediately upon notification, but it does not fix the term within which the Treasurer should assess the tax and notify the same.

It is thus plain that on July 10, 1922, when the taxpayer was notified of the tax assessed in accordance with the additional return, no question of prescription could be alleged successfully and in so deciding in August, 1922, the Treasurer acted in accordance with the facts and the law.

We have desired to study separately this first aspect of the case and to decide it on its merits in order to be more exact, although it seems that the same was abandoned by the taxpayer himself when he appeared before the courts of justice. In his brief the taxpayer alleges:

"The theory of our case is as follows: The plaintiff filed his original return in May, 1918. Taking this return as a basis an assessment and a collection thereof were made within the term of five years prescribed by the act of 1921. In July, 1922, an additional assessment of income for the same year 1917 was made. This additional assessment, the same as the original one, was made in accordance with the provisions of said act. But this additional tax, although duly assessed, was not only collected, as the original one had been, within the term of five years specified by the Act of 1921, inasmuch as any assessment of income taxes for 1917 had to be collected within five years after the filing of the original return. The facts show that the original return was filed in May, 1918, and the additional tax was collected on September 17, 1930, that is, twelve years later.

"The law governing our case is that of 1921. When the act of 1924 became effective, the term within which the additional tax assessed could be collected had already prescribed. As the original return was filed in May, 1918, the term for collecting the additional tax ended in May, 1923."

And he had previously stated:

"Prior to the year 1918 in so far as income taxes were concerned there was no law fixing the period of limitation, that is, the period within which the Government had to assess and collect taxes. The income tax act of 1918 was the first law that fixed a specific term within which collection had to be made. It fixed a term of five years which began to run from the date in which the return was due or was made—Section 250($d$) of said act. The act of 1921 fixed the same period of limitation from the date in which the return was filed. This act made the period of limitation extensive and applicable not only to the collection of taxes levied under said act, but it also prohibited the collection of taxes levied under any other prior income tax act, five years after the filing of the return. See Act of 1921, section 250($d$).

"We quote from Klein's 'Federal Income Taxation,' par. 42:8 ($a$), page 1490:

" 'The 1918 Act was the first to impose a specific period of limitation upon collection. It fixed a five-year period which began to run from the date when the return "was due or was made." The 1921 Act fixed the same period of limitation to commence with the filing of the return; it applied to the collection not only of taxes imposed by that act but likewise to taxes imposed by all prior acts...'

"So that the Act of 1921 made extensive and applicable to the Act of 1917 the period of limitation fixed for the collection of taxes levied by virtue of the Act of 1917; hence the Government could only collect taxes within the five years following the filing of the complaint. Applying this principle to the facts of this case, we have that as the plaintiff had filed his return in May, 1918, the Treasurer solely had till May, 1923, to collect the taxes. Collection after said date was illegal."

The Government on its part alleges in its brief:

"The Federal Act of 1918 was not applicable to Puerto Rico; the Act of 1916, as amended by Act of October 3, 1917, was the only one made extensive to this Island.

"Subsequently the Legislative Assembly of Puerto Rico in the exercise of the power granted thereto, repealed the Federal Act and approved different income tax acts; Act No. 59 of 1917; No. 80 of 1919; No. 43 of 1921, and No. 74 of 1925."

It is unimportant to determine whether the insular or the federal act are applicable in order to decide the question of

prescription raised, because both are practically identical on the subject. We are aware of the Federal Act invoked by the taxpayer. The Insular act prescribes:

"Section 56.—That any tax assessable, pursuant to the provisions of this Act, may be computed and levied by the Treasurer within five years from and after the date on which the return was rendered or should have been rendered; and no proceedings shall be brought for the collection of said tax after the expiration of five years.

"In case that, for the purpose of evading payment of the tax, no proper returns are made, and in case of false returns, the amount of the tax assessable may be determined and the tax collected at any time without limitation." Act No. 80 of 1919, Session Laws, page 662.

If the only dates that could be taken into consideration were those on which the taxpayer bases his argument, to wit: May, 1918, when the original return was rendered, July, 1922, when the additional tax was assessed, and September, 1930, when the proceedings that gave rise to the payment under protest took place, it would have to be admitted that he was entirely correct in claiming that the right of the People to collect the tax had prescribed.

Other dates must be considered. It appears from the stipulation that once the additional tax was assessed and the taxpayer notified on July 10, 1922, within the term of five years from May, 1918, and the administrative claims of the taxpayer having been dismissed, new notice and demand were not only made, but distraint proceedings for the collection thereof were begun before the lapse of the five-year period. We quote again from the stipulation (italics ours):

"*Eleventh.*—Subsequently the taxpayer availed of the services of Mr. Guillermo Cabrera to request from the Treasurer of Puerto Rico the suspension of the collection of receipt number 6-A, to which the person who was the Treasurer of Puerto Rico at the time acquiesced and ordered, by telegraph, the Collector of Internal Revenue of Mayagüez to stop collection for 30 days from October 20, 1922. At the expiration of said extension the plaintiff took new steps to postpone collection by retaining the services of Attorney

Cayetano Coll Cuchí, who in behalf of the taxpayer requested from the Finance Department in April, 1923, that an investigation be made, or that, in default thereof, the whole case be submitted to the decision of the Board of Review and Equalization. The Treasurer of Puerto Rico acquiesced to stop collection and it was agreed to verify the return in the investigation requested by Attorney Coll Cuchí, of which the Collector of Internal Revenue of Mayagüez was informed on the *13th of April, 1923. On this date the collector had already taken steps to begin attachment proceedings against the property of the plaintiff and taxpayer.*"

We learn from the stipulation that the new investigation requested by the taxpayer through his attorney Coll Cuchí could not be effected as the taxpayer himself informed that the books of account of the partnership Successors of Bianchi had been destroyed by the earthquarkes of 1918. We also learn from it that distraint proceedings were continued, the auction sale of the property attached was set for October 8, 1925; that the sale was suspended at the request of the taxpayer; that the latter in July, 1924, appealed to the Board of Review and Equalization and insisted that the tax had prescribed, the appeal was decided against him, and that then in July, 1930, the Treasurer proceeded, not to begin, but to continue the proceedings for the recovery of the tax in the administrative manner.

The law provides that distraint proceedings be begun or that suit be filed within the five-year period and it is accepted herein that distraint proceedings were begun on the 13th of April, 1923, when the five-year period, beginning in May, 1918, had not elapsed.

It is true that the proceeding was suspended, but that was done at the request of the taxpayer in order to practice a new investigation which could not be made because the taxpayer himself was unable to offer the basis necessary, that is, his books of account.

The period of limitation was thus reached, before the expiration of the five-year period from and after the inter-

ruption of the distraint proceedings, the sale of the property of the taxpayer having been set for October 8, 1924. Said sale was also suspended at the request of the taxpayer; he then appeared before the Board of Review and Equalization, and the latter decided the case against him in 1930. In June of same year, less than five years after the last interruption, the Treasurer insisted on the collection and the taxpayer paid under protest.

We have examined the jurisprudence invoked by the taxpayer in his brief and in our opinion the same is not against, but rather supports, the construction that we have given to the law applicable to the case at bar, as we shall see forthwith.

Among the cases cited there are two of the United States Supreme Court: *Bowers* v. *N. Y. & Albany Co.*, 273 U. S. 346, and *Russell et al.* v. *United States*, 278 U. S. 181.

In the first case cited the court said:

"The question for decision is this: Where, under the tax laws enacted prior to the Revenue Act of 1921, income and excess-profits taxes were assessed within five years after filing return, does sec. 250 (*d*) of that Act bar collection by distraint proceedings begun after the expiration of the five-year period?

"The part of the subdivision that has a bearing is printed in the margin. The clause in controversy is: 'No suit or proceeding for the collection of any such taxes . . . shall be begun, after the expiration of five years after the date when such return was filed.' Petitioner insists that the word 'proceeding' refers only to a proceeding in court and means the same as 'suit'; and that the Act prescribes no limitation against the collection of such taxes by distraint.

"There are two methods to compel payment. One is suit, a judicial proceeding; the other is distraint, an executive proceeding. The word 'proceeding' is aptly and commonly used to comprehend steps taken in pursuit of either. There is nothing in the language or context that indicates an intention to restrict its meaning, or to use 'suit' and 'proceeding' synonymously.

" * * * * * * *

"The word 'proceedings' is rightly used as descriptive of steps taken for the distraint and sale of property to enforce payment of taxes. See *Parker* v. *Rule's Lessee,* 9 Cranch 64, 70; *Murray's Lessee* v. *Hoboken Land and Improvement Co.,* 18 How. 272; *Sheridan* v. *Allen,* 153 Fed. 568. Cf. *Scottish Union & Nat. Ins. Co.* v. *Bowland,* 196 U. S. 611, 632, 633; *Hale* v. *Henkel,* 201 U. S. 43, 66. In a later part, Subdivision (*g*), of Sec. 250, 'proceedings' is used broadly in reference to steps for the collection of taxes. Obviously its meaning is not there limited to collection by suit. And in other parts of the Internal Revenue Laws, enacted before this controversy arose, that word is used as descriptive of steps taken to distrain and sell personal property and to seize and sell real estate for the collection of taxes. See R. S., Secs. 3194, 3199, 3200, 3203; side-notes to Secs. 3190 and 3197. Section 250 (*d*) of the Act of 1921 and these Sections of the Revised Statutes relate to the same subject and are to be construed together.

"It is clear that the meaning of 'proceeding' as used in the clause of limitation in Sec. 250 (*d*), Revenue Act of 1921, cannot be restricted to steps taken in a suit; it includes as well steps taken for the collection of taxes by distraint."

And in the second it held:

"The Revenue Act of 1921 limited the time within which income and profits taxes imposed by the Act of 1918 might be assessed, and within which suit might be brought to collect them, to five years from the filing of the return. Section 277 of the Revenue Act of 1924 preserves the same limitation generally, but where assessment is made within the prescribed period, Sec. 278 permits suit to be brought within six years from the assessment, that section declaring, however, that it shall not authorize any suit barred by existing limitation, or 'affect any assessment' made before the date of the Act. *Held,* considering these and other features of the 1924 Act, that the provision extending the time for suit should be construed prospectively as relating only to assessments made after that Act was passed."

Both cases were cited and applied by this Supreme Court in *People* v. *Succession of Serrallés,* 40 P.R.R. wherein it was held, quoting from the syllabus:

"Where it appears from the complaint in an action for the collection of taxes that the income tax returns had been filed more

than five years prior to the filing of the complaint, and that the tax had been paid in accordance with the liquidation made by the Treasury Department, and no allegation is made of falsification or fraud in the income tax returns, the action is barred under Section 56 of Act No. 80 of 1919.'' (Laws of 1919, p. 663.)

The other cases cited are from federal, district or circuit courts. In *Thornhill Wagon Co.* v. *Noel,* 17 F (2d), 407, 409, it was said in the course of the opinion:

''. . . If I apprehend correctly, the conclusion there announced, seems to have been answered in the affirmative by the Circuit Court of Appeals in the Second Circuit in *New York Lighterage Co.* v. *Bowers,* 10 F. (2d) 1017 (s. c. D. C. 4 F. (2d) 604,) for there it was apparently held that under Section 250 (*d*) of the Revenue Act of 1921 (Comp. St. secs. 6336 1/8 tt), imposing the five-year limitation, no proceeding by distraint could legally be begun after the five-year period and that payment made by a taxpayer as a result of such proceeding was payment by duress, and could be recovered in an action at law.''

And in that of *Citizens' Bank of Lafourche* v. *Miller-Link Lumber Co.,* 16 F (2d) 163, 164, the Court stated:

'' 'The first action taken by the government in this intervention or proceeding to collect the taxes was on July 5, 1923, when the collector filed a proof of claim in this court, claiming additional taxes of $2,815.07, 5 per cent penalty of $140.07, and interest at the rate of 1 per cent per month from March 27, 1923.'

''A distraint warrant was issued on a date that is uncertain, but for the purposes of this case it is conceded that it was prior to April 12, 1923. The receivers make the proposition, among others, that this intervention is barred by the five-year statute of limitation, same not having been begun until July 5, 1923, more than five years after the return that was filed on April 12, 1918.

''The contention of the government in reply is that this intervention, which consists of filing a proof of its claim and a request for its allowance as a claim with priority, is not a suit or proceeding within the meaning of those words as used in the statute—that 'judicial proceedings' only are referred to.

''Section 250 (*d*) of the Revenue Act of 1921, under the provisions of which this issue is to be determined, provides:

'' 'No suit or proceeding for the collection of any such taxes due under this act or under prior income, excess-profits, or war

profits tax acts, . . . shall be begun, after the expiration of five years after the date when such return was filed.' Comp. St. sec. 6336 1/8 tt (*d*).

"The claim filed here is against the receivers of the Miller-Link Lumber Company. The assets of that concern being administered by this court, interventions or claims filed in the manner in which this one was presented constitute the only method by which, under the circumstances, they may be allowed or paid, as against the Miller-Link Lumber Company. It is immaterial by what term the proceeding is designated. In its last analysis, the effort here is to obtain an order from this court that claim be allowed and in the marshaling of assets, that the receivers be directed to pay it in preference to other claims. It is necessarily a 'proceeding in court', and is the only procedure, it seems to me, that could be followed to accomplish the results desired.

"The language of the statute strikes me as being within itself conclusive of the questions involved. The law that creates the right to collect the taxes by its terms, provides that no suit or proceeding for the collection of them shall be begun after the expiration of five years after the date when the return was filed. The claim becomes to all intents and purposes extinguished after that time. It is the policy of the government that claims after that lapse of time shall be uncollectible in court. This construction, as far as I have been cited to cases and my own investigation extends, has been sustained by all the courts to which the question has been presented. *Du Pont* v. *Graham* (D. C.) 283 F. 300; *Seaman* v. *Bowers* (C. C. A.) 297 F. 371; *New York & Albany Lighterage Co.* v. *Bowers* (D. C.) 4 F. (2d) 604.

"There being no question of false or fraudulent rendition, and it being uncontroverted that the intervention was filed more than five years after the return was filed, I think the claim should be denied. It is so ordered."

The other cases cited adhere to the same reasoning and most of them follow the principle established by the Supreme Court of the United States in the Russell case, *supra,* applied by this Supreme Court of Puerto Rico in *Succession of Serrallés, supra,* to the effect that the longer period of limitation fixed by subsequent acts should apply to transactions executed after the approval of said acts.

Thus, in accordance with the law and the jurisprudence, the collection of the tax herein sought, either through distraint or judicial proceedings, should have been begun within a term of five years and we hold that, taking the facts of the case into consideration, distraint proceedings for the collection of the tax were not begun in June 1930, as claimed by the taxpayer, but in April, 1923, that is, within the term of five years. Whether that term be counted from May, 1918, when the original return was filed by the taxpayer, or from May, 1920, on which date the taxpayer subscribed voluntarily and without any objection, to the additional return prepared as a result of the investigation made by the Treasurer within the term of three years authorized by law.

To reach these conclusions we have not had to apply then any subsequent act and we have started from the basis that from the stipulation no question of falsity or fraud arises.

The judgment appealed from will be reversed and in lieu thereof another judgment will be rendered dismissing the complaint, without special pronouncement of costs.

Mr. Justice Córdova Dávila took no part in the decision of this case.